UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF THE
COMPLAINT OF MISS BELMAR II
FISHING INC., AS OWNER OF THE P/V
ROYAL MISS BELMAR, FOR
EXONERATION FROM OR
LIMITATION OF LIABILITY.

Civil Action No. 11-4757 (MLC)(LHG)

OPINION AND ORDER DENYING
PROPOSED CLAIMANTS' MOTION TO
SET ASIDE DEFAULT AND PERMIT
THE FILING OF ANSWERS AND
<u>CLAIMS</u>

This matter comes before the Court by way of a motion filed by Proposed Claimants Garrick Mathurin, Tanna Mathurin, Ronaldo Mathurin, and Selah Mathurin (collectively "Proposed Claimants") to Set Aside Default and Permit the Late Filing of Answers and Claims. [Docket Entry No. 142]. This Motion is opposed by Plaintiffs in Limitation Miss Belmar II Fishing Inc. ("the Belmar Plaintiff") [Docket Entry No. 147], and Aquatic Management LLC (d/b/a V.I. Seatrans) ("the Aquatic Plaintiff") [Docket Entry No. 146] (collectively "Plaintiffs" or "Plaintiffs in Limitation"). The Court has considered the moving and responding papers without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Proposed Claimants' Motion to Set Aside Default and Permit the Late Filing of Answers and Claims is DENIED.

I.      BACKGROUND[1]

This admiralty action arises out of the grounding of a ferry that occurred in the Virgin Islands in July of 2011. After the grounding, two companies, Plaintiffs in Limitation, filed two separate limitation of liability proceedings. These actions were consolidated by the Order of the Honorable Mary L. Cooper, U.S.D.J., on October 17, 2011. [Docket Entry No. 3]. On October

---

[1] The Court assumes the parties' familiarity with the case and therefore limits the facts to those pertinent to this Motion.

1

25, 2011, the Court issued a Monition and Order requiring that notice be given and that any claims against Plaintiffs be filed by December 9, 2011.  [Docket Entry Nos. 5, 6].  In accordance with these Orders and Supplemental Admiralty Rule F(4), notice of this proceeding and the deadline by which potential claimants needed to file claims were published for four consecutive weeks in the Virgin Islands Daily News.  Petitioner Miss Belmar II Fishing Inc.'s Memorandum of Law in Opposition to Proposed Claimaints' Motion to Set Aside Default and Permit the Filing of Answers and Claims ("Belmar Opp.") at 2  [Docket Entry No. 147]; Declaration of Alton Evans, Esq., in Opposition to Proposed Claimants' Motion to Set Aside Default and Permit the Filing of Answers and Claims ("Evans Decl.") ¶¶ 3-4 and Exs. A and B thereto [Docket Entry No. 147-1].  During this same period, notice was also electronically published on the online news source, V.I. Daily Source.  Belmar Opp. at 2; Evans Decl. ¶ 5 and Ex. B.  Additionally, as a result of the notice, the Virgin Island Daily News published an article discussing the lawsuit and further informing potential claimants of the filing deadline.  Belmar Opp. at 2; Evans Decl. ¶ 6 and Ex. C.

On August 2, 2012, Plaintiffs in Limitation filed a motion to preclude any new claimants from entering the suit.  [Docket Entry No. 38].  This motion was opposed by Jorden N. Pedersen, Esq., counsel for Proposed Claimants here, who also filed a cross motion for leave to file a late claim on behalf of Ira Galloway.  [Docket Entry No. 40, 42].  These motions were ultimately resolved on September 17, 2012, by way of a consent order permitting Galloway to file his claim and precluding the filing of additional, untimely claims.  [Docket Entry No. 44].   The Consent Order also listed the 61 claimants (the "Claimants") who had timely filed, and further ordered the default of any persons who had not yet filed a claim, thereby barring any such claims.  [Docket Entry No. 44].

The Initial Pretrial Scheduling Order provided for the exchange of Initial Disclosures and limited any further discovery to that agreed upon to facilitate settlement, in light of the parties' stated intention to mediate the claims. [Docket Entry No. 23]. The Initial Disclosures were served in February and March 2012, and included authorizations for the release of medical records for Claimants, as well as damages information. Evans Decl. ¶ 10. Those medical records were then reviewed and analyzed by Plaintiffs in Limitation. Evans Decl. ¶ 11.

A large scale mediation was conducted on July 9-10, 2012, pursuant to which numerous claims were settled. Belmar Opp. at 3, 5; Evans Decl. ¶ 9; Pedersen Decl. ¶ 5.

By Order dated December 17, 2012, the parties were required to complete any Independent Medical Examinations by March 29, 2013. [Docket Entry 82]. At the expense of their underwriters, Plaintiffs in Limitation then arranged for Independent Medical Examinations of the non-settling claimants. Belmar Opp. at 4; Aquatic Management LLC's Opposition to Motion to Set Aside Default ("Aquatic Opp.") at 2; Declaration of John A. V. Nicoletti, Esq. in Opposition to Proposed Claimants' Motion to Set Aside Default and Permit the Filing of Answer and Claims ("Nicoletti Decl.") ¶ 6 [Docket Entry No. 147-5]. To facilitate these examinations, Plaintiffs first sent two doctors to the Virgin Islands for three days in March 2013; the remaining examinations took place on a single day in April 2013 in Florida. Nicoletti Decl. ¶ 7; Belmar Opp. at 4; Aquatic Opp. at 2. As a result of the mediation and the parties' subsequent efforts, approximately 45 claimants had settled with Plaintiffs in Limitation by the fall of 2013 [*see* Docket Entry Nos. 47-79, 83-86, 97, 108-09, 116, 130-33], leaving only approximately 17 claimants remaining.

On October 11, 2013, over a year after the Court entered the order of default precluding the addition of new claimants to this litigation, Proposed Claimants filed the pending Motion.

3

[Docket Entry No. 142]. Plaintiffs in Limitation opposed the Motion. [Docket Entry Nos. 146, 147].

## II. THE LEGAL STANDARD

The Limitation of Shipowners' Liability Act ("the Limitation Act"), codified as amended in 46 U.S.C. § 30505, "has been part of the fabric of our law since 1851." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 517 (2008). The principle underpinning of the Limitation Act is even older and has been a steady fixture in European admiralty law "from time immemorial." *Providence & New York S.S. Co. v. Hill Mfg. Co.*, 109 U.S. 578, 593-94 (1883). The Limitation Act is designed "to limit the liability of vessel owners to their interests in the adventure and thus to encourage shipbuildig [sic] and to induce capitalists to invest money in this branch of the industry." *The British Transp. Comm'n v. United States*, 354 U.S. 129, 133 (1957).

> The Limitation Act plainly allows a vessel owner to limit its liability to the value of the vessel for any claim arising from a maritime incident that occurred 'without the privity or knowledge of the owner.' 46 U.S.C. § 30505. An owner may bring a limitation action in federal district court within six months of receiving written notice of a claim. *Id*. § 30511. The owner must deposit with the district court an amount (or an approved security) equal to the value of the vessel. *Id*. When the complaint and the deposit are submitted, 'all claims and proceedings against the owner related to the matter in question shall cease.' *Id*. The court then is directed to issue notice to all persons asserting claims against the vessel arising from the incident. Fed. R. Civ. P. Supp. R. F(4). The court may subsequently enter a default against any potential claimants who have not submitted timely filings. Those who do assert claims form a *concursus* that allows the district court to determine the liability of the owner to each individual in a single proceeding, constraining the total liability to the value of the vessel. *See, e.g.*, *Beiswenger [Enters. Corp. v. Carletta*, 86 F.3d 1032] at 1036 [(11th Cir. 1996)].

*Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251 (11th Cir. 2014)(footnote omitted).

Supplemental Admiralty Rule F(4) provides that, "[f]or cause shown, the court may enlarge the time within which claims may be filed." The Rule grants courts authority to permit

4

the filing of untimely claims—*i.e.*, those filed after a court enters an order of default. *See, e.g.*, *In re Trace Marine Inc.*, 114 F. App'x. 124, 126-27 (5th Cir. 2004) ("Rule F(4) allows a district court to permit a claimant in a limitation of liability proceeding to file a claim, *nunc pro tunc*, for good cause shown."). Although the Third Circuit has not addressed the issue, it is well established that courts consider three factors in deciding whether to allow late claimants to file untimely claims: (1) whether the proceeding is pending and undetermined; (2) whether granting the motion will adversely affect the rights of any party to the litigation; and (3) the claimant's proffered reason—the cause[2]—for late filing. *See id.*; *Alter Barge Line, Inc. v. Consolidated Grain & Barge Co.*, 272 F.3d 396 (7th Cir. 2001); *Jappinen v. Canada Steamship Lines, LTD*, 417 F.2d 189 (6th Cir. 1969); 8 Edward V. Cattell, Jr., *Benedict on Admiralty* § 8.01. The reason underlying the late filing must outweigh the potential prejudice to the existing parties. *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 363 (5th Cir. 1963). This is necessarily a fact intensive inquiry.

In evaluating the first factor, i.e., whether a limitation proceeding is pending and undetermined, courts are guided by the stage of the litigation, in terms of discovery, settlement efforts, and the setting of a trial date. Thus, courts have found a case pending and undetermined when a trial date has not been set, *see, e.g., In re R & B Falcon Drilling USA, Inc.*, Civ. No. 02-241, 2003 WL 296535, at *1 (E.D. La. Feb. 10, 2003), when a trial is several months away, *see In re Gladiator Marine, Inc.*, Civ. No. 98-2037, 1999 WL 378121 (E.D. La. June 7, 1999), or when the parties are in the early stages of discovery. *See In re R & B Falcon Drilling USA, Inc.*, 2003 WL 296535, at *1; *In re Central Gulf Lines, Inc.*, Civ. No. 97-3829, 1999 WL 102806, at *3 (E.D. La. Feb. 24, 1999). The converse is true when the parties have completed a substantial

---

[2] As is discussed below, courts disagree on the standard for cause and whether simple cause or good cause must be shown.

5

amount of the necessary discovery or if the plaintiff in limitation already extended settlement offers to the claimants. *See In re Clearsky Skipping Corp.*, Civ. No. 96-4099, 2000 WL 1741785, at *2 (E.D. La. Nov. 22, 2000); *see also* 3 Edward V. Cattell, Jr., *Benedict on Admiralty* § 83, at 115 n.1 and accompanying text (7th rev. ed. 2013).

Similar considerations guide the Court in evaluating the potential prejudice to any party arising out of the late filing. *In re Trace Marine Inc.*, 114 F. App'x. at 129. Prejudice has been found when all timely claimants have settled by the date the untimely claimant seeks to enter the suit, *see In re Malmac SDN BHD*, Civ. No. 91-3016, 1993 WL 483508, at *4 (E.D. La. Nov. 15, 1993), or the plaintiff in limitation relied upon the number of claimants in extending settlement offers and additional claimants would compromise those offers. *See id.* at *4; *In re Trace Marine Inc.*, 114 F. App'x. at 127; *Tanguis v. Westchester MV*, Civ. Nos. 01-449, 01-1558, 01-3559, 2003 WL 2004448, at *2 (E.D. La. Apr. 25, 2003). *But see In re FR8 Pride Shipping Corp.*, Civ. No. 12-185, 2013 WL 690837, at *2 (S.D. Tex. Feb. 25, 2013) (opining that court should not consider the reduction in money made available to timely claimants because this consideration would present itself in all cases). An adverse effect may also be found when the addition of a new claimant would interrupt discovery which is already underway, *see Tanguis*, 2003 WL 2004448, at *2, or require the plaintiff in limitation to engage in wholly new discovery or incur substantial new discovery costs. *See In re Malmac SDN BHD*, 1993 WL 483508, at *4.

In contrast, prejudice is less likely to be found where the addition of a new claimant does not surprise the plaintiff in limitation or timely claimants do not object to the inclusion of the untimely claimant. *See In re Gladiator Marine*, 1999 WL 378121, at *2. Minor, insignificant, or uncertain changes in the case schedule are similarly not considered prejudicial. *See In re Deray*, Civ. No. 05-2049, 2006 WL 1307673, at *1 (D.N.J. May 10, 2006); *In re FR8 Pride*

*Shipping Corp.*, 2013 WL 690837, at *2.  Other non-prejudicial factors include the addition of issues to the case when the major issues remain unaltered, *see In re Gladiator Marine*, 1999 WL 378121, at *2, or when no significant discovery has taken place.  *See In re Nakliyati*, Civ. Nos. 87-455, 88-506, 1989 WL 128581, at *6 (E.D.N.Y. July 10, 1989).

The federal circuits disagree as to the showing required for the final factor—the reason for the late filing.  According to the Fifth Circuit, the proposed claimant must show good cause. *See, e.g.*, *In re Trace Marine Inc.*, 114 F. App'x. 124.  In contrast, the Seventh Circuit requires only a minimal showing—a simple excuse will suffice.  *See, e.g., Alter Barge*, 272 F.3d at 397-98.  The Third Circuit has not addressed this issue.  While one District of New Jersey opinion aligned its reasoning with that of the Seventh Circuit and required only a minimal showing of cause, it did so without analysis of the standard.  *In re Deray*, 2006 WL 1307673, at *1 ("Courts have held that "late claimants in admiralty proceedings need not show 'good cause.'")(citing *Alter Barge*, 272 F.3d 396).  At least one court within the Circuit has, however, adopted the test requiring a more exacting scrutiny.  *In re J.A.R. Barge Lines, L.P.*, Civ. No. 03-163, 2005 WL 642700, at *1 (W.D.Pa. Feb. 17, 2005)("Courts have interpreted Rule F(4) as allowing a district court to permit a claimant in a limitation of liability proceeding to file a claim, *nunc pro tunc,* for good cause shown.").

"The reason normally given for not timely filing is lack of actual notice."  *In re Lloyd's Leasing LTD.*, 902 F.2d 368, 371 (5th Cir. 1990).  However,

> [w]here a monition and publication is made according to the rules and practice in admiralty proceedings, it becomes notice to 'all persons' having any claims, whether they received actual notice thereof or not, if they fail to appear within the time designated, they are liable to lose the opportunity of presenting their claims in that proceeding or any other.

7

*Dowdell v. U.S. Dist. Court*, 139 F. 444, 446 (9th Cir. 1905). In rare instances, courts have balanced the equities and deemed the lack of actual notice sufficient cause. *See In re River City Towing Servs. Inc.*, 420 F.3d 385, 388 (5th Cir. 2005).

In *In re Deray*, 2006 WL 1307673, then Chief Judge Brown granted one such request. In that case, the movant sought leave to file a late claim on behalf of herself and her two children for claims arising out of a June 2004 jet-ski accident that left her ex-husband unable to work.[3] *Id.* at *1. Movant's ex-husband was the sole claimant at the time. The movant's divorce attorney first received notice of the admiralty proceeding in October of 2005, four months after the notice of claim date. *Id*. The movant was informed that she had two years to file a claim and retained new counsel to pursue the admiralty claim. *Id*. With discovery not yet completed and no set trial date, the matter was considered pending and undetermined. *Id*. Moreover, the movant expressed her willingness to stipulate to permitting other claims to proceed in state court thus alleviating any potential prejudice alleged by the claimant, movant's ex-husband. *Id*. Based on the facts before him, Judge Brown found that the movant had shown sufficient cause for her untimely filing. *Id*.

Other "[c]ourts have held that it was an abuse of discretion to deny permission to late file claims when the claimant did not speak the language in which the notice was published or when the notice was not published in the claimant's geographical area." *In re Lloyd's Leasing LTD.*, 902 F.2d at 371 (the lack of actual notice was sufficient cause for the untimely filing of non-English speaking Vietnamese claimants who lived in an isolated community, but insufficient cause for a group of 240 English speaking claimants who lived in the geographical area of the

---

[3] The movant and the original claimant were married when the movant's husband suffered the injury but divorced by the time the movant sought to assert claims on behalf of herself and her children.

published notice) (citing *Segastume v. Lampsis Nav. Ltd.*, 579 F.2d 222, 224 (2d Cir. 1978), and *Jappinen*, 417 F.2d at 190-91).

Generally, courts afford more lenient treatment of limitation proceedings involving a single claimant. *See Alter Barge*, 272 F.3d at 398 (citing *In re Two "R" Drilling Co.*, Civ. A. No. 90-4184, 1991 WL 195513 (E.D. La. Sept. 24, 1991)). Thus, in a ruling explicitly limited to its facts, the Seventh Circuit found that the single possible claimant had shown cause when his untimely filing resulted from attorney error. *Alter Barge*, 272 F.3d 396. In contrast, a group of potential claimants had not shown cause when their ignorance led them to believe that they were already claimants and the plaintiffs in limitation had begun discovery and relied on the number of claimants in extending numerous settlement offers. *Tanguis*, 2003 WL 2004448, at *2. Similarly, another court held that it would set a bad precedent to allow a potential claimant to file a late claim when he failed to realize he sustained an injury until after the filing deadline, especially when the liability proceeding was well publicized. *In re Kirby Inland Marine, L.P.*, 365 F. Supp. 2d 777, 782 (M.D. La. 2005).

## III.     THE ARGUMENTS OF THE PARTIES

### a.     PROPOSED CLAIMANTS' ARGUMENTS

Proposed Claimants address the first two factors in a conclusory manner. While recognizing that settlement has been reached with many of the timely-filed claimants, they aver that the case is still pending and undetermined because discovery has not yet commenced. Memorandum of Law in Support of Motion of Claimants, to Permit Filing of Answers and Claims ("Br. in Supp.") at 3. [Docket Entry No. 142-3]. They then assert, without further elucidation, that there will be no prejudice to the parties in suit. Br. in Supp. at 3.

As to the final factor to be considered by the Court, Proposed Claimants argue that the Court must adopt the more lenient of the two standards and allow any reason to suffice for a showing of cause, without having to meet the higher "good cause" standard. In an affidavit sworn five months before the filing of his motion, Potential Claimant Garrick Mathurin states that it was in November 2012 that he learned that claims arising out of the maritime accident were settling. Declaration of Jorden N. Pedersen, Jr., Esq., in Support of Claimants, Garrick Mathurin, and His Minor Children, Tanna Mathurin, Ranaldo Mathurin and Selah Mathurin's Motion for an Order Permitting the Filing of an Answer and Claim ("Pedersen Decl."), Ex. 1 (Affidavit of Garrick Mathurin; hereinafter "Mathurin Aff.") [Docket Entry No. 142-2, ¶¶ 8-10]. He further attests that he learned of this limitation proceeding two months later, in January 2013, when he conferred with "Attorney Colon" regarding his ability to file a claim. Mathurin Aff. ¶ 12-13.

Proposed Claimants rely upon the Seventh Circuit's decision in *Alter Barge*, which held that the attorney's error in that case provided sufficient cause for the late filing, and attribute much of the delay in filing here to Pedersen's conduct after he learned of Proposed Claimants' relationship to the suit. Br. in Supp. at 4-5. Pedersen engaged in settlement discussions with Plaintiffs on behalf of Proposed Claimants between April and June of 2013, and motions and discovery related to other Claimants he represented demanded his attention between January and June of 2013. Pedersen Decl. ¶¶ 7-8. Additionally, in July and August of 2013, Pedersen was concerned that some or all of his clients in this matter would be assigned to a different attorney. Pedersen Decl. ¶ 9. He filed the pending motion two months after being assured that clients referred to him by Attorney Colon would remain with him. Pedersen Decl. ¶ 9.

10

b.  PLAINTIFFS IN LIMITATION'S ARGUMENTS[4]

Plaintiffs in Limitation argue that the case is no longer pending for the purpose of authorizing untimely filed claims because the vast majority of the timely-filed claims have settled.  Belmar Opp. at 8-9 (advising the Court that nearly four dozen claimants have settled and an additional 16 offers had been extended at the time the Belmar Plaintiff filed its brief in opposition).  Plaintiffs in Limitation counter Proposed Claimants' assertion that there has been no discovery by highlighting the Rule 26 disclosures, the production of medical records and documents related to damages, and the Independent Medical Examinations conducted by Plaintiffs in Limitation's doctors.  Aquatic Opp. at 4; Belmar Opp. at 9-10.  Specifically, after the Court's December 17, 2012 Order, the Claimants issued authorizations for the release of their medical records to Plaintiffs in Limitation.  Belmar Opp. at 4, 9.  Plaintiffs in Limitation further inform the Court that, upon review of the records provided, Plaintiffs coordinated a series Independent Medical Examinations of the Claimants.  Belmar Opp. at 4; Aquatic Opp. at 4.  The majority of the Claimants were evaluated over a three-day period in March 2013 by medical experts flown to the Virgin Islands; any remaining claimants were examined in Florida in April 2013 at Plaintiffs' expense.  Belmar Opp. at 4.  Accordingly, Plaintiffs in Limitation argue "that discovery is fairly advanced."  Belmar Opp. at 9.

Both Plaintiffs in Limitation argue that all of the current parties would suffer prejudice were the Court to permit this untimely filing to proceed.  Specifically, there would be the cost of conducting new discovery, particularly the additional medical examinations.  Moreover, the discovery previously conducted was crucial to evaluating the merits of the various claims and proposing appropriate responsive settlement offers.  Belmar Opp. at 11; Aquatic Opp. at 4.

---

[4] While Plaintiffs in Limitation filed separate briefs in opposition, their arguments are similar and are therefore consolidated in this section.

Claimants would be similarly prejudiced because their settlement amounts would suffer a reduction as a result of the addition of new claimants. Belmar Opp. at 10-11; Aquatic Opp. at 4-5.

Plaintiffs in Limitation argue that the Proposed Claimants have not shown adequate reason for their delay. While Proposed Claimants assert they lacked actual notice of this action prior to November 2012, Plaintiffs in Limitation claim that the very purpose of the published notice is to provide constructive notice and obviate the need for actual notice. Belmar Opp. at 13-14; Aquatic Opp. at 3-4. They cite to the publication of the notice in two news outlets, as well as the independent media coverage this proceeding received in the Virgin Islands. Aquatic Opp. at 3-4. Plaintiffs in Limitation rely on *Dowdell*, 139 F. at 446, in which the Ninth Circuit concluded that, regardless of actual notice, a claimant's failure to comply with appropriately published claim deadlines in a liability proceeding precludes the filer's ability to join the suit. *See* Aquatic Opp. at 3. In further support of this proposition, Plaintiffs in Limitation draw the Court's attention to *In re Kirby Inland Marine*, 365 F. Supp. 2d at 782, where the court opined that "it would set a bad precedent, particularly in a case that was well published . . . , to allow a person to delay filing a claim until that claimant can 'realize' that the individual has sustained injury." Aquatic Opp. at 4. Plaintiffs in Limitation also cite to *In re Malmac*, 1993 WL 483508,at *3, for the proposition that compliance with the publication of notice requirements of Rule F(4) places the entire world on constructive notice. Belmar Opp. at 13.

Plaintiffs in Limitation focus on several apparent gaps in Proposed Claimants' explanation for their delay in rebutting Proposed Claimants' attribution of post-notification delay to the conduct of their attorney. Belmar Opp. at 12-13. Specifically, they point out that neither the Mathurin Affidavit nor the Pedersen Declaration states when Proposed Claimants retained

12

counsel or at what point they instructed counsel to file a motion and that, in the absence of such direction, the delay cannot be attributed to counsel. Belmar Opp. at 12. Furthermore, Plaintiffs in Limitation specifically direct the Court's attention to the May 2013 date affixed to the Mathurin Affidavit and Proposed Claimants' counsel's description of the affidavit as unsigned in June of the same year. Belmar Opp. at 12-13 (referencing Pedersen Decl. ¶ 8). For all these reasons, Plaintiffs in Limitation aver that Proposed Claimants fail to show either cause or good cause for their delayed filing.

IV. DISCUSSION

Supplemental Admiralty Rule F(4) requires a proposed claimant to make a showing of cause in support of a request to set aside an order of default. *See, e.g.*, *In re Deray*, 2006 WL 1307673, at *1; *In re FR8 Pride Shipping Corp.*, 2013 WL 690837, at *2. Whether the untimely claimants will be allowed to proceed with their claims depends on a showing of cause that requires the balancing of three factors: (1) whether the proceeding is pending and undetermined; (2) whether granting the motion will adversely affect the rights of any party to the litigation; and (3) the claimant's proffered reason for the late filing. *See, e.g., In re Trace Marine Inc.*, 114 F. App'x. 124.

Furthermore, while the Court recognizes that the laws of admiralty are applied with "equitable liberality," *Texas Gulf*, 313 F.2d at 362, the Supreme Court has specifically cautioned that the Limitation Act should be applied in a manner that preserves the protections intended to benefit shipowners, lest the courts unintentionally deconstruct the design of the limitation of liability proceeding by administering it with an unduly liberal hand. *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 422 (1954) (quoting *Providence*, 109 U.S. at 588-89).

With regard to the first factor, it is well established that a case is no longer considered pending and undetermined once timely claimants have received offers of settlement.  *See* 3 Edward V. Cattell, Jr., *Benedict on Admiralty* § 83, at 115 n.1 and accompanying text (7th rev. ed. 2013) (stating that once "timely claimants have obtained an offer of settlement, the court will not permit belated claimants to come into the proceeding and reap the benefit of the efforts of those who are timely.").  Plaintiffs in Limitation inform the Court that over two-thirds of the Claimants have accepted offers of settlement and that, at the time this Motion was briefed, settlement offers were being extended to the remaining Claimants.  The docket reflects nearly four dozen stipulations of dismissal.  [*See* Docket Entry Nos. 47-79, 83-86, 97, 108-09, 116, 130-33].

In addition, Plaintiffs worked diligently with the Claimants, exchanged their Rule 26 disclosures, and conducted Independent Medical Examinations, thus neatly dispatching with the need for all but a small percentage of discovery.  The current status of discovery therefore further counsels the Court against labeling the case as "pending and undetermined."  *Cf. In re R & B Falcon Drilling USA, Inc.*, 2003 WL 296535, at *1; *In re Central Gulf Lines, Inc.*, 1999 WL 102806, at *3.  For the foregoing reasons, the Court finds that this matter is no longer pending and undetermined for the purposes of the Motion.

Based on the arguments proffered by Plaintiffs in Limitation, the Court finds that permitting Proposed Claimants to proceed with their untimely filing would prejudice the other parties to this limitation action.  Plaintiffs in Limitation took efforts to efficiently conduct the necessary Independent Medical Examinations, reducing both the time and cost involved in that process, by sending their doctors to the Virgin Islands and Florida where the claimants were located, at Plaintiffs in Limitation's own expense.  These efforts would be for naught if new

14

claimants were allowed to join the case, requiring additional IMEs. The addition of new claimants at this late stage might also jeopardize the funds available to the remaining Claimants and force Plaintiffs in Limitation to reevaluate the settlement offers already extended. Accordingly, Plaintiffs in Limitation have shown prejudice would likely occur if the Proposed Claimants were allowed to proceed.

Finally, the Court considers whether Proposed Claimants have shown cause for their delay.[5] Underpinning the entirety of Proposed Claimants' argument is their lack of actual notice of this proceeding. The system of constructive notice provided for in the Limitation Act and the admiralty rules is, however, central to effectuating the Act's purpose of limiting the liability of shipowners. This system allows a plaintiff in limitation to know with near certainty the number of claimants that will form the *concursus* and to strategize in response to that number. Allowing untimely filings simply because there has been no actual notice, despite fair and complete constructive notice in compliance with the statutory scheme, must be the exception rather than the rule. As discussed *supra*, while some have found that cause was shown and allowed untimely claimants to join in the proceeding based on the lack of actual notice, Proposed Claimants' situation does not merit such exceptional treatment.

The situation facing Proposed Claimants is easily distinguishable from the cases in which courts allowed untimely claims in the face of a lack of actual notice. Here, Proposed Claimants do not question the sufficiency of the published notice, nor do they assert that they could not understand the language of the publication or that the notice was published beyond their geographical area. *Cf. In re Lloyd's Leasing LTD.*, 902 F.2d at 371; *Segastume*, 579 F.2d at 224

---

[5] Because the Court finds Proposed Claimants have not even met the standard for cause, the Court need not address whether they should be required to meet the heightened standard for good cause.

(Spanish-speaking Honduran seamen who returned to Honduras shortly after a maritime accident did not have notice of the limitation proceeding when that notice was published in the New York Law Journal and mailed to other claimants); *Jappinen*, 417 F.2d at 190-91 (constructive notice published in Cleveland, OH, and Port Huron, MI, did not preclude late filing of ship's first mate, who lacked actual notice because he lived in a small Minnesota town). They simply asserted that they were unaware of this proceeding despite the local notice and media coverage. Indeed, there is nothing in the moving papers to suggest any defect in the notice or that it was not in full compliance with the Act, regulations, and court orders. In this case, ignorance of a limitation proceeding that has been properly published is not cause. *See Dowdell*, 139 F. at 446.

This Motion is unlike that in *In re Deray*, which involved a limited group of potential claimants—the injured claimant, his ex-wife, and their two children—arising from injuries to a single individual. *See In re Deray*, 2006 WL 1307673, at *1. That case therefore bore a stronger resemblance to cases involving single claimants who fail to timely file, which are treated more liberally. *See Alter Barge*, 272 F.3d at 398. In sharp contrast, more than 60 individuals timely filed claims in this matter. Finally, In *Deray* there was a finding that there would be no prejudice, whereas here the Court finds prejudice to the both Plaintiffs in Limitation and the remaining Claimants.

Counsel for Proposed Claimants seeks to shoulder the blame for the delay. Vague references to an attorney's busy schedule, without more, however, cannot suffice to relieve a tardy claimant of its burden to show the reasons for delay. *Alter Barge*, 272 F.3d at 398, cited by Proposed Claimants for the proposition that attorney error is sufficient grounds for a finding of cause, is not to the contrary and was in fact specifically limited to the facts of the case.

After reviewing Proposed Claimants' submissions, this Court cannot conclude that Proposed Claimants have shown cause for the delay, let alone good cause. They were on constructive notice of the suit; this they do not dispute. Even after they had actual notice, they took no action to join the suit despite the passage of many months. The vague assertions of the Mathurin Affidavit and the Pedersen Declaration do not answer these questions or meet Proposed Claimants' burden of showing cause to set aside the default.

V. CONCLUSION AND ORDER

For the foregoing reasons; and for good cause shown,

**IT IS** on this **24th** day of **March, 2014**,

**ORDERED** the Motion filed by Proposed Claimants to Set Aside Default and Permit the Late Filing of Answers and Claims [Docket Entry No. 142] is hereby DENIED.

**LOIS H. GOODMAN**
**United States Magistrate Judge**